[L. A. No. 4063. Department One.—December 14, 1917.]

ROY J. FARR, Respondent, v. N. A. WOLCOTT et al., Appellants.

PROMISSORY NOTE—ACTION AGAINST GUARANTORS—FINDINGS—ASSIGN-MENT AND DELIVERY—INSUFFICIENCY OF EVIDENCE.—In an action by an assignee against the guarantors of a promissory note, payable to the order of "J. H. B., Trustee," the evidence examined and found insufficient to sustain findings of a sale, assignment, and transfer of the note to a bank as alleged in the complaint, and the indorsement, transfer, and delivery by the bank to the plaintiff, it appearing from the testimony that J. H. B., the payee, had borrowed the amount of the note from the bank, pledging the note as security, accompanied by his personal check as a guaranty, that he had paid the loan the following day, and that the bank, which thereafter held the note as a mere depositary for J. H. B., the true owner, indorsed it without authority to the plaintiff without consideration, for the purposes of collection only.

ID.—ACTION AGAINST GUARANTORS—EVIDENCE OF PAYMENTS TO TRUE OWNER—ADMISSIBILITY.—In such case it was error to reject evidence offered by the defendants to prove that payments had been made by means of money collected by the real owner of the note, which he had agreed with the maker of the note to apply on the indebtedness.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Roland G. Swaffield, Stutsman & Stutsman, Tanner, Odell, Odell & Taft, and Williams, Goudge & Chandler, for Appellants.

F. C. Austin, and Samuel Barnes Smith, for Respondent.

SLOSS, J.—The complaint alleges that on May 16, 1910, Los Angeles City Realty Company (a corporation) made, executed, and delivered its promissory note, whereby it promised to pay to the order of J. H. Bullard, trustee, on or before three years after date, the sum of fifteen thousand dollars, and interest payable monthly, with an option to the holder to declare the principal due on default in the payment of interest; that before the delivery of said note the defendants, by writing thereon, guaranteed the payment of the note in words as follows:

"For value received, we, jointly and severally guarantee payments of this note, and any renewal thereof and hereby waive protest, demand and notice of nonpayment.

"(Signed)   N. A. WOLCOTT.
"E. M. K. WOLCOTT.
"F. A. KING."

The complaint alleges that on July 1, 1912, and before maturity, J. N. Bullard, trustee, sold, assigned, and transferred the note to the United States National Bank; that in due course of business said bank indorsed said note and delivered same to plaintiff, who is now the lawful holder thereof. It is alleged that the maker of the note has defaulted in the payment of interest since January 16, 1911; that no part of the principal has been paid, except $151.19; and that the balance of the principal, together with interest from February 16, 1911, is due. Prior to the filing of the complaint the plaintiff exercised his option to declare the whole sum due, and demanded payment from the maker, which was refused.

N. A. and E. M. K. Wolcott answered jointly, and defendant King filed a separate answer. The answers deny, among other things, the making of the note, its transfer to the United States National Bank by Bullard, or by said bank to the plaintiff. They also deny the allegation of nonpayment of the note. The answers seek, in addition, to set up the invalidity of the note itself, and the rescission by the

defendants of their guaranty because of fraudulent misrepresentations alleged to have been made to them. The court found that the note was made as alleged, and found in favor of the plaintiff on the allegations of nonpayment and of indorsement and delivery of the note. It also found that no fraudulent representations had been made by the payee to the defendants. There is a finding "that the allegations of the defendants that said note was not duly executed are not true; . . . and that the defendants have no legal standing to question the execution thereof." Judgment was entered in favor of the plaintiff as prayed, and defendants appeal from such judgment and from an order denying their motion for a new trial.

The bill of exceptions contains specifications of insufficiency of the evidence assailing, among other things, those regarding the sale, assignment, and transfer of the note by Bullard to the United States National Bank, and the indorsement, transfer, and delivery by the bank to the plaintiff. We think the attack upon these findings well founded. The only evidence of the transaction between Bullard and the United States National Bank was that of O. M. Souden, vice-president of said bank. His testimony was, in effect, that Bullard came to him and asked if the bank would discount the note. Souden refused to do so. Bullard thereupon offering to guarantee the note, Souden told him that the bank would loan him money upon it if he would guarantee it. Bullard indorsed the note to the bank without recourse, and was immediately handed a check for fifteen thousand dollars. Bullard at the same time handed the bank his check for fifteen thousand dollars, which was the form agreed upon for his guaranty of the note. Bullard's check, which, apparently, was drawn on the United States National Bank, was passed through the bank's books the following day and charged to Bullard's account. The amount was applied to the payment of the loan which had been made to him. "As soon as the transaction was over," Mr. Souden testified, "the note was filed away for the account of Dr. Bullard. . . . We considered it as Dr. Bullard's property. When we cashed Dr. Bullard's check and marked this loan card paid, the loan which we had made to Dr. Bullard on that day was then and there paid." While in the earlier part of his testimony Mr. Souden had said that the bank

"bought the note," his later and more detailed explanation, of which we have given the substance, shows plainly that the real nature of the transaction was that Dr. Bullard borrowed fifteen thousand dollars from the bank on the security of the note, accompanied by his own guaranty in the form of his personal check. Until this loan was paid, the note remained in the hands of the bank as a pledge. When, on the following day, Dr. Bullard paid the loan, the lien was extinguished, and the note was thereafter held by the bank as a mere depository for Dr. Bullard, the true owner. The indorsement to the plaintiff was concededly without consideration, and for purposes of collection only. There is no evidence that the bank, which was thus holding the note for Dr. Bullard, the true owner, had any authority to make a transfer of it for purposes of collection, or otherwise.

But, if it could be inferred on the entire record that the transfer to plaintiff was made with the sanction and approval of Dr. Bullard, it still remains that the plaintiff, in suing the defendants on their guaranty, was acting as agent for Dr. Bullard, rather than for the bank. In this aspect it becomes important to consider the ruling of the court excluding evidence on an offer by the defendants to prove that five thousand dollars had been paid on the note by means of money collected by Dr. Bullard, which, as defendants claimed, he had agreed with the maker of the note to apply upon this indebtedness. If, as we have endeavored to show, Dr. Bullard was the real owner of the note, and of the guaranty indorsed upon it, no question of *bona fide* holder can arise. He was certainly bound by his own act, and the defendants were entitled to credit for any payments actually received by him. It was manifest error to reject the proffered testimony.

Various other questions of interest are suggested, or suggest themselves. They are, however, not presented in the briefs with the care and thoroughness which their importance deserves. We shall not, therefore, at this time, undertake to express any opinion regarding their merits. In preparation for a new trial it would be well for counsel on both sides to more fully investigate these points, among which we may mention: (1) The question of the right of the guarantors to attack the binding force of the note as against its maker; (2) whether the doctrine protecting a *bona fide* holder of negotiable paper taking for value before maturity has any application to a contract of guaranty like the one in suit;

(3) whether a note payable to J. H. Bullard, trustee, is to be regarded in law as a note payable to the person named, as an individual, or may be shown to have been given to him in a representative' capacity; (4) whether the fact (assuming that it could be shown) that Bullard was acting as trustee for another has any bearing on the validity of the corporate action authorizing the note, when it appears that Bullard's own vote as director was necessary to the passage of the resolution under which the note was made; (5) in what respects the liabilities of a guarantor whose contract has been written on a negotiable instrument differ from those of an indorser.

Some or all of these questions may become important on a new trial, and it is due to the trial court that they should be more adequately presented than' they have been on this appeal.

The judgment and the order denying a new trial are reversed.

Shaw, J., and Lawlor, J., concurred.